IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JESUS MANUEL QUINTERO** | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | |
| v. | : | NO. 24-CV-3025 |
| | : | |
| **CITY OF READING POLICE** | : | |
| **DEPARTMENT,** *et al.*, | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J.                                                                AUGUST 2, 2024

Currently, before the Court is a Complaint filed by Plaintiff Jesus Manuel Quintero, a pretrial detainee who is incarcerated at the Berks County Jail. (ECF No. 2.) Quintero raises constitutional claims, pursuant to 42 U.S.C. § 1983, based on his encounter with police officers in the City of Reading and his pending prosecution in Berks County. Quintero seeks to proceed *in forma pauperis*. For the reasons set forth below, the Court will grant Quintero leave to proceed *in forma pauperis*, dismiss certain of his claims, and stay his remaining claims until the underlying criminal proceeding that is pending against him in state court is resolved.

**I.      FACTUAL ALLEGATIONS**[1]

Quintero sues five officers of the City of Reading Police Department — Officer Fisher, Officer Seiler, Officer Gresh, Officer Blauser, and Officer Heck (the "Officer Defendants") — the Berks County District Attorney's Office, and Assistant District Attorney Jim Glissaw.[2] (Compl.

---

[1]   In determining whether the Complaint states a claim, the Court considers Quintero's allegations, exhibits attached to the Complaint, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

[2]   In an abundance of caution, the Clerk's Office included the City of Reading Police Department on the docket as a separate Defendant. However, the Court understands the phrase "City of Reading Police

at 1-4.)[3]  Quintero alleges that the events giving rise to his claims occurred on April 1, 2024, at 121 S. 8th Street in Reading, Pennsylvania, while he was waiting for a ride at a friend's house. (*Id.* at 6, 7.)

Quintero alleges that on that occasion, a "mark[ed] car was coming fast at [him]," which caused him to run in fear.  (*Id.* at 7.)  Police officers were in the car, and the Complaint suggests that those officers ultimately caught up with Quintero.  (*Id.*)  Quintero alleges that the officers "violated [his] right[s] by using [his] prior history against [him] trying to say [he] had a gun [even though he] had a soda bottle with soda in it."  (*Id.*)

Quintero attached to his Complaint as an exhibit an affidavit of probable cause in support of a police criminal complaint (*id.* at 5), which he contends will "show how they violated [his] rights."  (*Id.* at 7.)  It is not clear who authored the affidavit.  The affidavit, which is dated April 1, 2024, reads:

> On April 1st 2024 while on Duty with the Reading Police Vice Division I was viewing the Video Safety Unit camera at S. 8th and Cherry St.  I observed a male that I knew to be Jesus Quintero standing in front of 121 S. 8th St.  I observed the defendant was wearing a black hoodie with white writing on it and dark gray or black pants.  I observed that the defendants right pants pocket appeared to have a heavy object inside of it and the pants were sagging down.  As I continued to observe the defendant he moved around and at one point I observed what I immediately recognized to be the bottom of a handgun grip/magazine and the clear imprint of a firearm inside of his right pants pocket.
>
> I know that the Defendant is a Person not to Possess a Firearm due to a previous conviction for Possession with the Intent to Distribute narcotics.

---

Department" in the caption of the Complaint to modify the term "officers," as used to describe the five police officers who are sued rather than to identify a separate defendant.  In any event, the City of Reading Police Department is not an appropriate defendant in this § 1983 case because it is not a "person" subject to suit under the statute.  *Martin v. Red Lion Police Dept.*, 146 F. App'x 558, 562 n.3 (3d Cir. 2005) (*per curiam*) (stating that police department is not a proper defendant in an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality); *Davis v. Ludgate*, No. 19-800, 2019 WL 1400306, at *2 (E.D. Pa. Mar. 28, 2019) ("Neither the Reading Police Department nor the "Reading State Police" is a "person" subject to suit under § 1983.").

[3]    The Court adopts the pagination supplied by the CM/ECF docketing system.

> Investigators Fischer, Seiler, Gresh, Blauser, Heck, and I responded to the location. We were all wearing ballistic vest [sic] clearly marked "POLICE" on the front and back in white lettering. I pulled slightly past where the defendant was standing and stopped my vehicle. As I was stopping the vehicle I observed the defendant look at me and then turn towards 121 S. 8th St. I opened my door and yelled "POLICE, DON'T MOVE." The defendant then ran inside of 121 S. 8th S and slammed the door in my face. I opened the door and observed him running through the dining room towards the rear of the address. I followed the defendant after ensuring that no one else was in the first floor of the residence. I observed the male exit the back door and jump over a fence. Other investigators were close to the male and continued to chase him to the 100 block of S 9th St where he was detained.
>
> Investigator Gresh read the defendant his Miranda warnings and the defendant stated that he understood his rights. Investigator Gresh asked the defendant if he had been in possession of a firearm that day. The defendant stated that he had a firearm on his person earlier in the day and described it as a black 40 caliber handgun. The defendant was transported to City Hall after a small baggie containing suspected methamphetamine was located in his clothing.
>
> At City Hall Investigator Gresh and I interviewed the defendant again. Quintero again stated that he had been in possession of a black handgun from early that morning until right before we had attempted to stop him. Quintero stated that it looked like a GLOCK. We asked him if it was loaded and he stated that it was. He stated that he checked to make sure that there was ammunition in the magazine to ensure that it was loaded. He also stated that the back of ammunition was stamped "40" which is how he knew that it was a 40 caliber. Quintero stated that he has had problems with East side gang members due to [his] previous involvement with the Southside gang. Quintero stated that he has previously been in possession of the same handgun for the same reason.
>
> I conducted a preliminary drug identification (NARKII) test on the suspected methamphetamine and received a positive result for methamphetamine. Based on the investigation conducted and the information received I respectfully request that the defendant be arraigned on the aforementioned charges in this complaint.

(*Id.* at 5.) Consistent with the affidavit, public dockets reflect that on April 1, 2024, Quintero was charged in Berks County with prohibited possession of a firearm, intentional possession of a controlled substance, and evading arrest or detention on foot, and arraigned the same day. *Commonwealth v. Quintero*, MJ-23102-CR-0000065-2024. The charges are currently pending

3

against Quintero in the Berks County Court of Common Pleas. *Commonwealth v. Quintero*, CP-06-CR-0001263-2024 (C.P. Berks).

Quintero alleges that "there [was] no [weapon] to be charge[d] with and I want my charges dismiss[ed]." (Compl. at 7.) He also seeks damages for loss of his liberty, stress and "unlawful arrest." (*Id.*)

## II. STANDARD OF REVIEW

The Court grants Quintero leave to proceed *in forma pauperis* because it appears that he does not have the ability to pre-pay the fees to commence this case.[4] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Quintero is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The

---

[4] However, as Quintero is currently incarcerated, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

Court is also obligated to dismiss any claims seeking monetary relief from an immune defendant. 28 U.S.C. § 1915(e)(2)(B)(iii).

## III.   DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Based on his allegations, Quintero's claims are best construed as Fourth Amendment claims for false arrest, false imprisonment, and malicious prosecution. *See Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 367 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment."); *Albright v. Oliver*, 510 U.S. 266, 273-74 (1994) (explaining that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment[] . . . must be the guide for analyzing these claims" (internal quotations omitted)); *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name.")

### A.   Request for Dismissal of Pending Criminal Charges

Quintero asks this Court to dismiss the state criminal charges pending against him. When a prisoner seeks dismissal of state charges because of constitutional violations, his claims must be pursued in state court or in a petition for a writ of *habeas corpus* filed in federal court; such claims are not cognizable in a civil rights action. *See Jaffery v. Atl. Cnty. Prosecutor's Office*, 695 F. App'x 38, 41-42 (3d Cir. 2017) (*per curiam*) ("[T]o the extent Jaffery seeks dismissal of

the charges against him as a result of constitutional violations, such relief is only available through a writ of habeas corpus."); *Duran v. Weeks*, 399 F. App'x 756, 759 (3d Cir. 2010) (*per curiam*) ("[T]o the extent that Duran is seeking dismissal of the charges against him as a result of constitutional violations, he is essentially asking for relief only available through *habeas corpus*."); *see generally Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (when a prisoner "is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of *habeas corpus*"). Accordingly, to the extent Quintero seeks dismissal of the state charges pending against him, his claims are dismissed because they are not cognizable in a civil rights action.[5] The Court will address Quintero's remaining claims for damages below.

**B.     Claims Against Assistant District Attorney Glissaw**

Although Quintero named Assistant District Attorney Glissaw as a Defendant, Quintero provides no factual allegations against him. The logical inference is that Quintero sued Glissaw because of his role as Assistant District Attorney in prosecuting the charges filed against Quintero. However, prosecutors are entitled to absolute immunity from damages under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *Roberts v. Lau*, 90 F.4th 618, 624 (3d Cir. 2024) ("Prosecutors . . . are absolutely immune from liability under § 1983 for engaging in conduct that serves a quasi-judicial function."); *Fogle v. Sokol*, 957 F.3d 148, 164 (3d Cir. 2020) (prosecutors were entitled to immunity from claims

---

[5]     This dismissal does not preclude Quintero from pursuing these claims and requests for relief through proper channels. *See Rushing v. Pennsylvania*, 637 F. App'x 55, 58 n.4 (3d Cir. 2016) (*per curiam*) ("The District Court's dismissal of his § 1983 complaint should not constitute a bar to any collateral attacks by Rushing against his state proceedings.").

based on allegations "that at hearings and at trial the Prosecutors withheld material exculpatory evidence from defense counsel, the court, and the jury; filed a criminal complaint without probable cause; and committed perjury before and during trial"). Accordingly, the Court will dismiss Quintero's claims against Glissaw because he is absolutely immune from civil rights claims for damages based on his prosecution of the criminal charges against Quintero.

### C.  Claims Against the Berks County District Attorney Office

Quintero has also failed to provide any factual allegations in support of a claim against the Berks District Attorney Office. In any event, it is not clear that this Defendant is an entity subject to suit under § 1983 such that it could be considered a proper defendant in this case. *See Reitz v. Cnty. of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) ("[T]he Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability."); *see also Briggs v. Moore*, 251 F. App'x 77, 79 (3d Cir. 2007) (*per curiam*) ("[T]he Monmouth County Prosecutor's Office is not a separate entity that can be sued under § 1983."); *Harper v. City of Philadelphia*, No. 18-365, 2018 WL 5784549, at *2 (E.D. Pa. Nov. 2, 2018) ("District courts within the Third Circuit disagree about whether the DAO is a separate entity from the City of Philadelphia such that it can be sued separately under § 1983."). *But see Quintana v. City of Philadelphia*, No. 17-996, 2017 WL 3116265, at *4 (E.D. Pa. July 21, 2017) ("Quintana may sue the District Attorney's Office in addition to the City."); *Sourovelis v. City of Philadelphia*, 103 F. Supp. 3d 694, 711-12 (E.D. Pa. 2015) ("[T]he Court concludes that neither § 16257 nor *Reitz* bars suit against the D.A.'s Office under the circumstances of this case."). But even assuming that the Berks County District Attorney's Office could be subject to liability in a § 1983 action, Quintero has not alleged a plausible basis for a claim against it because nothing in the Complaint suggests that the alleged violations of Quintero's rights stemmed from a policy or custom of the Berks County District Attorney's Office. *See*

*Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978) (to state a § 1983 claim against a municipal entity, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation); *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009) (explaining that the plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard); *see also Connick v. Thompson*, 563 U.S. 51, 66 (2011) (in the context of a claim based on *Brady* violations at the district attorney's office, concluding that "recurring constitutional violations are not the 'obvious consequence' of failing to provide prosecutors with formal in-house training about how to obey the law"); *Barosh v. Ramirez*, No. 19-322, 2020 WL 416844, at *6 (M.D. Pa. Jan. 27, 2020) ("[E]ven assuming that Plaintiff can proceed against the DAO, he has failed to set forth a municipal liability claim against that entity."). Accordingly, Quintero's claims against the Berks County District Attorney's Office is dismissed.

### D. Claims Against the Officer Defendants

The crux of Quintero's Complaint is his Fourth Amendment claims against the Officer Defendants. Liberally construing the Complaint as a whole, the Court understands the factual basis of Quintero's claims to be that the Officer Defendants lacked a basis for detaining him on suspicion that he was unlawfully in possession of a gun when he was simply in possession of a soda bottle and, further, lacked probable cause to charge him with unlawful possession of a gun based on evidence found as a result of the allegedly unlawful stop.

"If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007); *see also Younger v. Harris*, 401 U.S. 37, 43-44 (1971) (recognizing that the

"longstanding public policy against federal court interference with state court proceedings" generally requires federal courts to abstain from addressing issues in state criminal proceedings absent exceptional circumstances); *Rex v. Fisher*, No. 12-4045, 2012 WL 3537846, at *2 (E.D. Pa. Aug. 15, 2012) (staying false arrest and illegal search claims for damages when plaintiff "ha[d] the opportunity to raise his Fourth-Amendment challenges in the course of his criminal proceeding"). Because Quintero has an opportunity to raise his Fourth Amendment challenges in his state criminal proceeding, *Commonwealth v. Quintero*, CP-06-CR-0001263-2024 (C.P. Berks), the Court will stay his Fourth Amendment claims for damages against the Officer Defendants until that proceeding is resolved.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Quintero leave to proceed *in forma pauperis*, dismiss his claims for relief seeking dismissal of his criminal charges, dismiss his claims against Defendants Glissaw and Berks County District Attorney's Office, and stay his remaining Fourth Amendment claims for damages against the Officer Defendants until the underlying criminal case resolves. The Court concludes that amendment of the dismissed claims would be futile because of the legal defects in those claims and because it is apparent that the factual basis for Quintero's claims rests on the conduct of the Officer Defendants. An appropriate Order follows.

*NITZAI. QUIÑONES ALEJANDRO, J.*